## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **CRIMINAL NO. 18-CR-312 (TSC)** |
| **LAFONZO WILLIAMS,** | **:** | |
| | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### GOVERNMENT'S MEMORANDUM FOR PRETRIAL DETENTION

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion for pretrial detention of the defendant.  On February 12, 2019, the government requested that Defendant Williams be detained pursuant to 18 U.S.C. § 3142(f)(1)(A), 18 U.S.C. § 3142(f)(1)(D), and 18 U.S.C. § 3142(f)(2)(A) of the federal bail statute.  The government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

### INTRODUCTION

On October 16, 2018, a grand jury returned a superseding indictment charging Defendant Williams with one count of Robbery of Mail, Money, or Other Property of the United States, in violation of Title 18 U.S.C. § 2114(a), stemming from an armed robbery of a postal employee that occurred on July 5 , 2018.  For the reasons set forth below, there are no conditions or combination of conditions that will reasonably assure the appearance of the defendant and the safety of the community, and should be held without bond pending trial.

## PROCEDURAL HISTORY AND APPLICABLE AUTHORITY

On February 12, 2019, Defendant Williams was arrested on an outstanding warrant and charged with Robbery of Mail, Money, or Other Property of the United States, in violation of Title 18 U.S.C. § 2114(a).   Defendant Williams appeared for his initial appearance before Magistrate Judge Harvey on the date of his arrest and the Court granted the government's Motion for Temporary Detention and scheduled a detention hearing for February 14, 2019.

Under the statute, pretrial detention must be supported by clear and convincing evidence when the justification involves the safety of the community, and a preponderance of the evidence when the justification involves the risk of flight. *U.S. v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).   There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  *See* 18 U.S.C. § 3142(g).   A review and understanding of the facts and circumstances in this case causes the government to ask the Court to conclude that there are no conditions or combination of conditions that would assure the safety of the community or the defendant's appearance in Court. Therefore, Defendant Williams should be detained pending trial.

## Nature and Circumstances of the Charged Offenses

This case involves the armed robbery of a postal employee in broad daylight on July 5, 2018.   On July 5, 2018, at approximately 2:34 p.m., Defendant Williams walked up to a Postal Service truck parked in the rear of the Frederick Douglass Post Office, located at 2833 Alabama

Ave. SE, Washington, D.C. 20020.  Defendant Williams, dressed in a gray shirt, black shorts, white socks and dark shoes, approached the truck and pulled himself into the back of the truck, where the postal worker was sorting mail.  Once inside of the truck, Defendant Williams pulled a knife from the pocket of his shorts and told the driver in the truck to give him the bags containing money.  Defendant Williams then took the bags and a Postal Service plastic tub, exited the truck, and fled on foot in the direction of Denver Street SE towards 30th Street SE. Losses of cash and negotiable instruments exceeded $70,000.  This was an atypical amount due to a confluence of factors, including that it was the beginning of the month and there were two remittance bags onboard the truck, both coming from one station, suggesting insider information factoring into the planning of the robbery.  Defendant Williams fled the scene in a minivan; the minivan was captured in surveillance footage from the scene.

On September 6, 2018, Witness-1, contacted law enforcement regarding the July 5, 2018, robbery.  Witness-1 had been an ear-witness to admissions made by Defendant Williams regarding his involvement in an armed robbery of a postal truck on Alabama Avenue.  Witness-1 advised that Defendant Williams stated that he had robbed the post office and that he had received information from another individual who had a connection to the Post Office and had information about money coming and going from the Post Office.  According to Witness-1, Williams stated that he had obtained $70,000 during the armed robbery, and that he kept $50,000, and gave $20,000 to the individual who had the connection to the Post Office. Williams also advised that he wore a wig while committing the offense.  Witness-1's statements were corroborated by the fact that the information regarding the sum of money taken during the armed robbery was not publicly known and the video shows an individual matching Williams's

appearance (wearing a wig), entering the postal truck.   Phone records corroborate frequent contact between Williams and the individual who was identified as having the connection to the Post Office, including contacts shortly before the armed robbery.   After the armed robbery, Williams stopped using the phone number that he had been using leading up to the armed robbery.

As law enforcement followed up on this lead, they were able to identify a minivan that was captured on video footage leaving the area of the Post Office as the same vehicle that was operated by Defendant Williams (including unique rust stains).   Law enforcement also identified a second witness, Witness-2, who advised that Defendant Williams had shown Witness-2 a large amount of U.S. currency in early July, 2018.   Witness-2 stated that when it asked Williams where he had obtained the money, Williams stated that he watched someone load a bag in the back of a truck and he got out of the car and grabbed the money.   Williams also told Witness-2 that he had bought a trip to Las Vegas with money from the robbery.   Defendant Williams did not advise Witness-2 where the robbery had taken place.

A search warrant was executed at Defendant Williams's residence and a pair of shorts that match the shorts that can be seen in the footage from the Post Office (including unique strings that hang from the shorts).   Additionally, law enforcement seized a pair of sneakers belonging to Williams that appear consistent with the sneakers that can be seen on the surveillance footage from the Post Office.   The handle on the postal truck was swabbed for possible DNA, as the suspect can be seen grabbing the handle as he pulls himself into the vehicle.   DNA testing was done on the swabs from the truck's handle and a partial DNA profile was obtained from sample.   Due to the limited data obtained, no conclusions could be made on

this partial profile.

This was not a crime of opportunity, but was a planned, well-thought out offense. Defendant Williams waited for the postal employee to be loading large amounts of U.S. currency into the vehicle and then ambushed the postal employee, while brandishing a knife. Defendant Williams then quickly made his get-away in his minivan that he had parked nearby. After Postal Inspectors executed the search warrant at Defendant Williams's residence and seized the vehicle driven by Williams that can be seen fleeing from the scene of the armed robbery, Defendant Williams has sought to evade law enforcement. He has not returned to his place of employment and is no longer frequenting locations that law enforcement had previously surveilled him at. Additionally, immediately after the armed robbery, Defendant Williams dropped his phone number (the phone number that he had used to contact the individual who had inside information about the Post Office), demonstrating persistent efforts to not be identified by law enforcement.

### Weight of the Evidence against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. An individual matching Defendant Williams's physical appearance can be seen on surveillance footage jumping into the truck and committing the offense. The video captures what appears to be a knife being pulled from his pocket (and then concealed again as he runs from the scene). Defendant Williams's minivan – with unique rust stains and other identifying features – can be seen fleeing from the area immediately after the robbery. Clothing and footwear (specifically, the shorts and sneakers seen in the video footage) that can be seen on the surveillance footage has been seized from the defendant. Additionally, two independent witnesses have advised that Williams made admissions regarding his involvement in the offense.

Those admissions include information that was not publicly known and could only have been provided by someone who had personal knowledge of the armed robbery (including the amount of money taken during the armed robbery).  Finally, phone records corroborate Witness-1's account of Williams being in contact with an individual with contacts to a postal employee with information about money moving through the post office.

Additionally, Defendant Williams's behavior after he learned that law enforcement had identified him as a suspect provides further evidence of his consciousness of guilt.  He appears to be attempting to hide from law enforcement, having stopped going to his place of employment and having stopped frequenting locations where he had previously been surveilled by law enforcement.

### Defendant Williams's History and Characteristics

At the time of the July 5, 2018, armed robbery, Defendant Williams has amassed an extensive – and troubling – criminal history.  This includes a prior armed robbery in D.C. of a postal worker; a case where Defendant Williams had been sentenced by Judge Huvelle to 137 months of incarceration to be followed by five years of supervised release.  The facts and circumstances of that offense are set forth in the Factual Proffer in Support of Guilty Plea (03-030).  *See* Attachment A.  Notably, Defendant Williams admitted that he brandished a handgun at the postal employee and demanded the parcels and bag of coins that the employee was carrying.  Officers attempted to stop Williams's vehicle as he fled from the scene of the crime, but Williams fled at a high rate of speed, before ultimately crashing into a tree in Maryland. Defendant Williams tossed a loaded .22 caliber revolver as he fled from police; the loaded revolver was later recovered (with Defendant Williams's blood on the firearm from a cut that the

defendant had obtained while trying to scale a fence).

Defendant Williams's supervision for that offense ended on March 9, 2017, less than 18 months before the armed robbery of the postal employee that brings him before this Court. More concerning is that the prior conviction for the very same offense is not Defendant Williams's only prior conviction. In fact, his prior criminal history includes other serious violent offenses (two armed robberies in Maryland), a Bail Reform Act violation, and narcotics convictions.

These convictions include:

| Convictions | Jurisdiction | Docket No. | Date & Sentence |
|---|---|---|---|
| Robbery of Mail, Money, or other Property of United States (18 U.S.C. 2114) | D.D.C. (Judge Huvelle) | 03-030 | 10/31/2003 – 137 months of incarceration; to be followed by 5 years of supervised release |
| Robbery with a Deadly Weapon | P.G. County, MD | CT980239X | 6/30/1998 – 15 years custody, all but 5 suspended (concurrent with CT980239X) (12/6/06 – probation revoked; terminated unsatisfactorily) |
| Robbery with a Deadly Weapon | P.G. County, MD | CT980654X | 6/30/98 – 15 years custody, all but 5 suspended; 4 years probation (12/6/06 – probation revoked; terminated unsatisfactorily) |
| Bail Reform Act Violation | Superior Court (D.C.) | 97-9861 | 90 days (suspended) |
| Poss. Marijuana | Superior Court (D.C.) | 94-8940 | 8/29/95 – 75 days custody |
| Possession with Intent to Distribute Controlled substance | Circuit Court, Baltimore County, MD | 190145004 | 2/14/1991 – 5 years custody, all but 10 months suspended; 5 years probation |
| Sale of Stolen Vehicle After Traveled Interstate (x3) [FBI sting operation – Defendant most culpable in ring of car thefts where vehicles | D.D.C. | 85-0437 | 3/6/1986 – 60 months custody; probation revoked 1/26/1994 |

| stolen in PG County and being brought into DC) | | | |
|---|---|---|---|

As detailed in the Pretrial Services Report, Defendant Williams has failed to comply with terms of community supervision on at least three prior occasions.  This track record demonstrates an inability to comply with release conditions and the danger he poses were he to be released pending trial in this case.  Moreover, Defendant had been in the community less than 18 months after his supervised release concluded for his prior armed robbery of a postal employee, when he re-offended.

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.  The actions of the defendant pose an extreme danger to the community:  defendant plotted a brazen, broad-daylight armed robbery of a postal employee.  Defendant brandished a knife at the postal employee, endangering the postal employee's life.  Fortunately, the employee complied with the defendant's demands and was not harmed during the robbery.  Perhaps more troubling, this recent conduct does not stand in isolation: this offense follows a lengthy criminal history involving numerous armed robberies.  Despite having faced substantial periods of incarceration for similar conduct, Defendant has returned again and again to the same conduct and presents an ongoing threat to the community.

### There is No Condition or Combination of Conditions that Would Ensure the Defendant's Compliance with Court-Ordered Release Conditions

The weight of the evidence and the gravity of the alleged offense provide compelling justification for the continued detention of the defendant until this case is resolved.  Given all of

8

these facts and circumstances discussed above, as well as the Defendant's extensive criminal history involving armed offenses, there are no conditions of release or combination of conditions of release that could ensure the safety of the community or Defendant's appearance in Court.

WHEREFORE, the Government requests that the Court order Defendant Williams to be detained without bond pending resolution of this case.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar 472845

By:                    /s/                   
LAURA CRANE
D.C. Bar 992454
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20001
(202) 252-7667
Laura.crane@usdoj.gov

Attachment A

**FILED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUL 3 0 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 03-030 (ESH) |
| | : | |
| v. | : | |
| | : | |
| LAFONZO WILLIAMS, | : | |
| also known as ALFONZO WILLIAMS | : | |
| | : | |
| Defendant. | : | |

### FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

The government's evidence in this case includes, but is not limited to, the following:

On December 27, 2002, at approximately 11:25 a.m., Jonathan White, a postal employee,

visited the SunTrust Bank at 6422 Georgia Avenue, NW.  While at the bank, he purchased and

obtained approximately $300 worth of coins with U.S. Postal Service ("USPS") funds.  Mr.

White also received two packages from a bank employee to place in the mail.

Upon leaving the bank, Mr. White started to walk across the parking lot toward his van.

In his hands were a bag of coins, which he had placed in an Express Mail envelope, and a

shopping bag containing the two packages.  Suddenly, he heard a voice shout, "Give it up!"

Turning around, Mr. White saw a dark-skinned, heavy set black male – later identified as the

defendant – wearing a black ski mask and pointing a dark handgun at his mid-section.  The

defendant took both parcels from Mr. White, but dropped the bag with the coins.  When some of

the coins fell to the pavement, he ordered Mr. White to gather them up, and Mr. White complied.

Mr. Williams then turned from his victim and headed in the direction of an alley.  He then

stopped and returned briefly to Georgia Avenue, where he lifted up the ski mask and looked up

and down the street. Mr. Williams then turned away from Georgia Avenue and ran down the

alley. A witness ("W-1"), who was standing across the street and who also observed the robbery,

was able to get a good look at Mr. Williams without his mask.

Another witness had observed the defendant exiting a white Nissan Maxima with a gun in

his hand just before the robbery and called 911. The police broadcast a lookout for the vehicle.

Within five minutes of the robbery, officers of the Metropolitan Police Department ("MPD")

noticed a car matching that description near the intersection of Blair Road and Kansas Avenue,

NE. The officers attempted to make a traffic stop. The Nissan pulled over to the curb; however,

when one of the officers started to approach the vehicle, it sped off at a high rate of speed.

A chase ensued. At one point, the front passenger, who turned out to be Mr. Williams,

threw the shopping bag stolen from Mr. White out his window. A couple of blocks later, he

threw the coins, which were in plastic wrappers, out the window.

The Maxima left the District and entered Prince George's County. The MPD officers

continued their pursuit. The car eventually pulled into the driveway of a private residence and

struck a tree. Mr. Williams emerged from the front passenger seat and began running. After a

foot chase, MPD Officer Robert Fessock was able to subdue Williams and detain him. During

the chase, Officer Fessock observed Mr. Williams throw a small, black handgun.

Approximately an hour after the robbery, the police conducted a show-up procedure with

W-1. W-1 immediately identified Mr. Williams as the person it saw robbing Mr. White and

whom it saw lifting the ski mask before fleeing. The police placed Mr. Williams under arrest.

Mr. White later identified the wrapped coins Mr. Williams threw from the car as resembling

those he had obtained from the bank. Mr. White also described the handgun used in the robbery

-2-

as a small, black .22 caliber revolver with a short barrel.  The bank teller identified the packages

Mr. Williams threw from the car as the packages she earlier had given to Mr. White.

After Mr. Williams' apprehension, a canine squad with the Prince George's County

Police Department retraced the route of the foot chase.  The dog led the police to a black ski

mask.  In addition, a citizen who lived in the vicinity of Mr. Williams' escape route called the

Police Department in the afternoon to report that it had found a black snub nosed .22 caliber

revolver under a car that was along the path of the chase.  The gun contained two live rounds of

.22 caliber ammunition.  There was also blood on the gun.  During the course of the foot chase,

Mr. Williams cut his hands while trying to scale a fence.  The U.S. Postal Inspection Service sent

the gun and a blood sample from Mr. Williams to the Bode Technology Group in Springfield,

Virginia, for a DNA comparison.  The result of the comparison was that the DNA on the gun

matched Mr. Williams' DNA and that the chance of the blood on the gun coming from another

male member of the African-American population was 1 in 14 quadrillion.

Respectfully submitted,

ROSCOE C. HOWARD, JR.
United States Attorney

By: _____

JAY I. BRATT
Assistant United States Attorney
Illinois Bar No. 6187361
Transnational/Major Crimes Section
555 4th Street, NW, Room 11-437
Washington, D.C.  20530
(202) 353-3602

-3-

## DEFENDANT'S ACKNOWLEDGMENT

I have read and discussed this Factual Proffer in Support of Guilty Plea fully with my attorney, Diane S. Lepley, Esquire. I agree, and acknowledge by my signature, that this proffer of fact is true and accurate for the purpose of the plea of guilty in this case.

Date:

LAFONZO WILLIAMS
Defendant

Date:

DIANE S. LEPLEY, ESQ.
Attorney for Lafonzo Williams

-4-